UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-734-CHL

TIMOTHY W. MCGUFFIN,                                                              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                                        Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is the Complaint (DN 1) of Plaintiff, Timothy W. McGuffin ("McGuffin"). In his Complaint, McGuffin seeks judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g) (2017). McGuffin filed a Fact and Law Summary. (DN 18.) The Commissioner filed a Fact and Law Summary in response. (DN 24.) The Parties have consented to the jurisdiction of a magistrate judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 23.) Therefore, this matter is ripe for review.

For the reasons stated herein, the final decision of the Commissioner is **AFFIRMED**.

## I.   FINDINGS OF FACT

McGuffin filed an application for disability insurance benefits and supplemental social security income on July 24, 2014. (DN 13-5, at PageID # 322-31.) On January 27, 2017, Administrative Law Judge Teresa A. Kroenecke (the "ALJ") conducted a hearing on McGuffin's application. (DN 13-2, at PageID # 87-130.) In a decision dated March 31, 2017, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. (DN 13-2, at PageID # 53-79.) In doing so, the ALJ made these findings:

> 1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2019. (*Id.* at 58.)

2. The claimant has not engaged in substantial gainful activity since December 31, 2013, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: coronary artery disease and hypertension status post stenting; degenerative changes and disc disease of the lumbar spine; degenerative changes of the cervical spine; chronic obstructive pulmonary disease; and history of seizures. (*Id.* at 59.)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 64.)

5. [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: the claimant requires allowance to alternate into the sitting position from the standing and/or walking positions every 30-45 minutes for 2-3 minutes while at the work station and to alternate into the standing position from the sitting position very [*sic*] 30-45 minutes for 2-3 minutes while at the work station; the claimant is able to perform up to occasional balancing, stooping, crouching, and climbing of ramps and stairs but no kneeling, crawling, or climbing of ladders, ropes, or scaffolds; the claimant must avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, vibration, or hazards, such as unprotected heights, moving mechanical parts or driving; and the claimant must avoid even moderate exposure to fumes, odors, dusts, gases, and areas of poor ventilation. (*Id.* at 65-66.)

6. The claimant is unable to perform any past relevant work. (*Id.* at 77.)

7. The claimant was born on July 1, 1965 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (*Id.*)

8. The claimant has a limited education and is able to communicate in English. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id.*)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*)

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2013, through the date of this decision. (*Id.* at 78.).

McGuffin requested an appeal to the Appeals Council (DN 13-4, at PageID # 320), which denied his request for review on October 16, 2017 (DN 13-2, at PageID # 47-49). At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210(a) (2019); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), McGuffin is presumed to have received that decision five days later, on October 21, 2017. 20 C.F.R. § 422.210(c). Accordingly, McGuffin timely filed this action on December 6, 2017. *See* 42 U.S.C. § 405(g).

## II. CONCLUSIONS OF LAW

The Social Security Act authorizes payments of disability insurance benefits to persons with disabilities. *See* 42 U.S.C. § 401 – 434, 1381 – 1383f (2017). An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2019).

### A. Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla;" it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

   B.   **Five-Step Sequential Evaluation Process**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920 (2019). In summary, the evaluation process proceeds as follows:

   (1)   Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

   (2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[1] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

   (3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

   (4)   Does the claimant have the residual function capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

---

[1] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months. 20 C.F.R. §§ 404.1509, 416.909 (2019).

4

(5) Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. McGuffin's Contentions

McGuffin made four allegations of error. First, he argued that the ALJ erred in her assessment of the opinion of consultative examiner Dr. Gregg Wendorff, M.D., ("Dr. Wendorff"). (DN 18-1, at PageID # 879-85.) Second, he argued that the ALJ's assessment of McGuffin's credibility was defective because the ALJ failed to consider McGuffin's "stellar work history." (*Id.* at 885-88.) Third, he argued that ALJ erred at Step 5 by not determining whether the light occupational base was "significantly reduced" by the ALJ's assessment of McGuffin's RFC. (*Id.* at 870-876.) Finally, he argued that the ALJ improperly relied upon jobs at Step 5 that would have required an accommodation by his employer for McGuffin to perform them. (*Id.* at 876-78.) The Court will address each argument below.

#### 1. Dr. Wendorff's Opinion

McGuffin argued that the ALJ erred in her assessment of the opinion of consultative examiner Dr. Wendorff. (*Id.* at 879-85.) In making a determination of a claimant's RFC, the ALJ is required to consider the record as a whole, including the claimant's testimony and opinions from the claimant's medical sources. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a) (2019). The source of

a medical opinion dictates the process by which the ALJ gives it weight. *Gayheart*, 710 F.3d at 376. Generally, the ALJ is required to give more weight to a source who has examined the claimant than one who has not and more weight to a source who regularly treats that claimant than one who does not. *Id.* at 375. An examining source "has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with her.'" *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 402.1502). Dr. Wendorff was an examining source, not a treating source, because Dr. Wendorff assessed McGuffin in person on one occasion. (DN 13-7, at PageID # 532-36.)

In affording weight to an examining source, the ALJ is required to "consider factors including the length and nature of the treatment relationship, the evidence that the physician offered in support of her opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in her specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). However, a medical opinion from an examining source is "never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376. Further, unlike when an ALJ gives less than controlling weight to the opinion of a treating physician, an ALJ is not required to give "good reasons" for the weight ascribed to an examining physician's opinion. *See Ealy*, 594 F.3d at 514 ("[A]n ALJ is procedurally required to 'give *good reasons* in [his] notice of determination or decision for the weight [he gave the claimant's] treating source's opinion.' However, this requirement only applies to treating sources." (emphasis added)). Instead, the ALJ must only "say enough 'to allow the appellate court to trace the path of his reasoning.'" *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)).

6

Dr. Wendorff found that McGuffin could sit for one to two hours, stand for thirty to sixty minutes, and walk up to one "city block if walking at a slow, steady pace." (DN 13-7, at PageID # 535.) He found that McGuffin could lift and carry ten pounds but had no limitations "with grasping and manipulating objects, hearing or speaking." (*Id.*) The ALJ deemed Dr. Wendorff's opined limitations, to the extent greater than the ALJ's RFC finding, to be both unsupported by Dr. Wendorff's own objective findings during his examination and "inconsistent with the weight of the medical evidence from other sources and weight of the total medical and other evidence . . . ." (DN 13-2, at PageID # 75.) As to Dr. Wendorff's own findings, the ALJ cited Dr. Wendorff's finding that McGuffin exhibited full bilateral grip strength; full bilateral upper and lower extremity strength; normal range of motion and posture; normal gait and coordination, and McGuffin's ability to sit and stand without difficulty. (*Id.* at 70-71; DN 13-7, at PageID # 534.) In assessing the medical evidence overall, the ALJ noted that medical records documented "normal objective findings regarding [McGuffin's] overall cardiac and cardiovascular functioning including heart rate, rhythm and sounds, peripheral pulses, an absence of lower extremity edema and denials of chest pain, shortness of breath, palpitations dizziness, lightheadedness or headaches from February 2014 through January 2017." (*Id.* at 69.) The ALJ cited that despite a recommendation for a trial use of compression socks and change in neuropathic pain medication, McGuffin's medical records did not substantiate a need for him to put his legs and feet up. (*Id.* at 68.) The ALJ recounted that any limitations regarding standing, sitting, and walking in McGuffin's medical records were adopted as a result of complications of lower extremity neuropathy and findings by a treating neurologist of "moderate symmetrical bilateral ankle jerk deep tendon reflexes" for which he was prescribed medication (*Id.* at 70.) The ALJ highlighted that MRI studies of McGuffin's spine showed only "mild" or "slight" findings of severity and that x-rays of his hips and spine from

7

November 2015 and March 2016 were normal. (*Id.*) The ALJ summarized that "the medical evidence from treating and examining physicians show[ed] repeated normal objective findings regarding normal motor function, muscle tone and strength in both upper extremities, both lower extremities and in grip, ranges of motion, sensation, reflexes, posture, coordination and gait prior to January 2017 . . . ." (*Id.*) The ALJ observed that McGuffin's treatment had been routine and conservative, that there had been no offer or recommendation regarding surgical intervention by his physicians, and that McGuffin's "course of treatment had] essentially been limited to taking prescribed opiate pain, neuropathic pain, muscle relaxant and anti-inflammatory medication" along with use of a heating pad, physical therapy, and some steroid and epidural injections. (*Id.* at 71.) The ALJ also noted that her RFC was largely consistent with the opinions of the state agency physicians who found McGuffin capable of performing work with light exertional demands. (*Id.* at 75.)

While McGuffin cited to certain evidence in his brief that he claims contradicts the ALJ's finding, the question before the undersigned is whether the Commissioner's decision is supported by substantial evidence. *Gayheart*, 710 F.3d at 374; *Smith,* 893 F.2d at 108. If so, the undersigned may not even evaluate whether the record could support the opposite conclusion. *Smith,* 893 F.2d at 108. In light of this and the other evidence cited by the ALJ, the Court finds the ALJ supported her decision regarding the weight assigned to Dr. Wendorff's opinion with substantial evidence.

McGuffin argued that the ALJ impermissibly failed to assess the regulatory factors set forth in 20 C.F.R. § 404.1527 in assessing Dr. Wendorff's opinion. (DN 18-1, at PageID # 881.) However, an ALJ is not required to explicitly recite the regulatory factors if his or her explanation reflects them. *Infantado v. Astrue*, 263 Fed. App'x. 469, 474 (6th Cir. 2008); *see also Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804-05 (6th Cir. 2011). Here, the ALJ's opinion

contained sufficient information to make clear that her reasons for affording little weight to Dr. Wendorff's opinion was its inconsistency with the record as a whole. Accordingly, the ALJ's opinion included a sufficient basis for meaningful review and is not deficient for failure to cite each and every regulatory factor set forth in 20 C.F.R. § 404.1527. McGuffin also argued that the ALJ failed to acknowledge that Dr. Wendorff's opinion, as one from an examining source, was generally preferred pursuant to the regulations. (DN 18-1, at PageID # 881.) However, McGuffin cited no case law or regulation requiring an ALJ to credit an examining medical source's opinion that the ALJ has deemed inconsistent with record as a whole.

Finally, McGuffin argued that the ALJ impermissibly relied upon "her lay analysis of the raw medical data," citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009). (DN 18-1, at PageID # 884.) An ALJ is not bound to accept the opinion or theory of any medical expert, "but may weigh the evidence and draw his own inferences." *Simpson,* 344 Fed. App'x at 194 (quoting *McCain v. Dir., OWCP*, 58 Fed. App'x 184, 193 (6th Cir. 2003)). Even so, the ALJ cannot "substitute h[er] own medical judgment for that of the treating physician," *id*. (citing *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006)), and may not make her own independent medical findings. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor") (citations omitted). While a "written evaluation of every piece of evidence" is not required, the ALJ must "sufficiently articulate his assessment of the evidence" to assure that he considered the important evidence and to enable the Court to trace a path of his reasoning. *Id.* at 971 (quoting *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam)). Here, given the thorough analysis of the relevant medical evidence in support of her RFC finding, McGuffin's subjective complaints, and the expert opinions in the

9

record as set forth above, the Court concludes the ALJ did not "play doctor" or inappropriately draw her own inferences from the medical data.

For these reasons, Court finds that the ALJ's assessment of Dr. Wendorff's opinion is supported by substantial evidence, and McGuffin has not demonstrated any error in the ALJ's opinion regarding the same.

### 2. McGuffin's Work History

McGuffin also argued that ALJ failed to assess his "stellar" work history in determining his credibility and his RFC as required. (DN 18-1, at PageID # 885-88.) Instead of using the term "credibility," the Social Security regulations address "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2019). The regulations require an ALJ to consider a claimant's "prior work record" in evaluating his symptoms. *Id.* §§ 404.1529(c); 416.929(c). Here, the ALJ stated,

> I have considered the claimant's work history, which was generally good with heavy and very heavy exertional work and significant work in skilled occupations over the 15 years immediately prior to his alleged onset of disability. While the limitations in the above residual functional capacity are inconsistent with any of the claimant's past relevant work, it does not follow that all work is precluded. In the instant case, the weight of the total evidence, particularly the medical evidence, does not support greater functional limitation than the above residual functional capacity.

(DN 13-2, at PageID # 74-75 (citations omitted).) While the ALJ did not state that McGuffin's work history was "stellar" or "exemplary" as cited by McGuffin, she did acknowledge that it was "good" and indicated that the weight of the medical evidence did not support greater limitations than her RFC. (*Id.*) McGuffin cited no case law requiring an ALJ to reach a particular conclusion based on a claimant's work history. Because the ALJ explicitly considered and acknowledged

McGuffin's work history as required, the Court finds the ALJ's decision regarding the same was supported by substantial evidence.

### 3. Significant Reduction in Occupational Base

McGuffin also argued that the ALJ erred at Step Five in not making a finding as to whether the additional limitations placed on McGuffin in the ALJ's RFC were so significant as to have "significantly reduced" the light occupational base. (DN 18-1, at PageID # 870-76.) At Step 5, the ALJ has the burden of demonstrating there exist a significant number of jobs in the local, regional, and national economies that the claimant can perform, given his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g); 20 C.F.R. §§ 404.1560(c), 416.960(c) (2019); *Jordan*, 548 F.3d at 423. The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine whether jobs exist in significant numbers in the economy that the claimant can perform considering the combination of his or her limitations. *See, e.g., Fry v. Comm'r of Soc. Sec.*, 476 Fed. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Where a claimant has from only exertional limitations, the Commissioner may also meet this burden by relying on the Medical Vocational Guidelines, otherwise known as the "grids."[2] *See, e.g., Collins v. Comm'r of Soc. Sec.*, 357 Fed. App'x 663, 670 (6th Cir. 2009). However, it is "the general rule in this [C]ircuit that, where a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform."[3]

---

[2] An "exertional" limitation is defined as one that affects a claimant's "ability to meet the strength demands of jobs." 20 C.F.R. §§ 404.1569a(b), 416.969a(b) (2019).
[3] A "nonexertional" limitation is defined as one that affects a claimant's "ability to meet the demands of jobs other than the strength demands." 20 C.F.R. §§ 404.1569a(c), 416.969a(c). The regulations include "difficulty tolerating

*Jordan,* 548 F.3d at 424 (citing *Burton v. Sec'y. of Health & Human Servs.,* 893 F.2d 821, 822 (6th Cir.1990)).

Here, the ALJ only used the grids as a framework given McGuffin's nonexertional limitations. (DN 13-2, at PageID # 77-78.) The ALJ then asked the vocational expert ("VE") whether jobs existed in the national economy for an individual with McGuffin's age, education, work experience, and RFC. (*Id.* at 78, 124-27.) The VE testified that even in the face of the exertional limitation regarding alternating standing and sitting positions, an individual with the RFC described in the ALJ's hypothetical would be able to perform the requirements of the jobs of cashier, which had approximately 206,000 jobs in the national economy; merchandise marker, which had approximately 94,000 jobs in the national economy, and subassembler, which had approximately 9,800 jobs in the national economy.[4] (*Id.*) The ALJ then relied on the VE's testimony in support of her conclusion that McGuffin was "capable of making a successful adjustment to other work that exist[ed] in significant numbers in the national economy." (*Id.* at 78.) Having reviewed the ALJ's decision and the ALJ's examination of the VE, the Court finds that the ALJ's questions to the VE regarding the number of jobs in the national economy that an individual with McGuffin's RFC could perform properly *addressed* the issue of whether the occupational base was reduced by the exertional and nonexertional limitations included within the ALJ's RFC finding, even though the ALJ did not *specifically ask* whether the occupational base

---

some physical feature(s) of certain work settings," such as an inability to "tolerate dust or fumes," as well as "difficulty maintaining the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching" as examples of nonexertional limitations. *Id.* §§ 404.1569a(c)(v)-(vi); 416.969a(c)(v)-(vi).

[4] Prior to a hypothetical including the nonexertional alternate sitting and standing limitation, the VE had testified that the jobs of cashier, merchandise marker, and router existed in the national economy in 861,000; 290,000; and 55,000 positions respectively. (DN 13-2, at PageID # 124-25.) After the additional nonexertional limitation was added, the VE testified that the number of cashier positions would be reduced by one-fourth to 206,000 and the number of merchandise marker positions would be reduced by two-thirds to 94,0000. (*Id.* at 125-26.) The VE then added that an individual with those limitations could likewise work as a sub-assembler, with 9,800 jobs in the national economy. (*Id.* at 126.)

was significantly reduced. Accordingly, McGuffin's argument to the contrary is without merit, and the Court finds the ALJ's decision at Step Five to have been supported by substantial evidence.[5]

### 4. Jobs Requiring Accommodation

Finally, McGuffin argued that because he would have needed an accommodation to perform the jobs identified by the VE and the ALJ at Step Five, the ALJ's decision was unsupported by substantial evidence. (DN 18-1, at PageID # 876-78.) However, the record does not substantiate that McGuffin would have required an accommodation to perform the jobs identified by the VE. Instead, the VE testified in response to a hypothetical mirroring the limitations imposed by the ALJ's RFC finding that an individual with those limitations could perform the jobs of cashier, merchandise marker, or sub-assembler. (DN 13-2, at PageID # 125-26.) The VE testified that "approximately one-fourth of cashiers in the national economy do have the *option* of sitting, standing, and walking as defined within the parameter of [the ALJ's] hypothetical" and that the job of "merchandise marker also *can be performed* sitting, standing and walking as defined within the parameters of [the ALJ's] hypothetical" and "approximately one-third of merchandise markers are marking small items, such as jewelry, accessories, sunglasses, can meet that hypothetical." (*Id.* (emphasis added).) McGuffin provided no authority to support the proposition that this testimony by the VE meant McGuffin would have needed an accommodation to perform the jobs identified. Accordingly, McGuffin's argument is without

---

[5] McGuffin's arguments regarding SSR 83-12 are non-dispositive of the instant case. (DN 18-1, at PageID # 874-75.) SSR 83-12 addresses "claims in which an individual has only *exertional* limitations." SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). As set forth above, McGuffin's RFC included nonexertional limitations; therefore, SSR 83-12 is inapplicable here. *See, e.g.*, *Baumbach v. Commissioner of Social Sec.*, 1:13-CV-851, 2015 WL 139714, at *8 (W.D. Mich. Jan. 12, 2015) ("SSR 83–12 did not apply to plaintiff's claim because she had non-exertional limitations.").

merit, and the Court finds the ALJ's decision at Step Five to have been supported by substantial evidence.

## III.    CONCLUSION AND ORDER

For these reasons, and the Court being otherwise sufficiently advised, IT IS HEREBY ORDERED as follows:

(1)    The final the decision of the Commissioner of Social Security is **AFFIRMED**, and this action is **DISMISSED** with prejudice.

(2)    A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of record
September 26, 2019